**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

ARES MANAGEMENT LLC,

                          Plaintiff,

vs.

STARLIGHT CAPITAL GROUP, INC., a
Colorado corporation, REGISTRANT OF
STARCAPITALCORP.COM,
REGISTRANT OF ARESCOIN.IO,
ARESCOIN, REGISTRANT OF
ARESBOTS.IO, ARESBOTS,
REGISTRANT OF ARESZCOIN.COM,
ARESZCOIN, NICHOLAS FLINT, and
DOES 1-10,

                          Defendants.

---

## COMPLAINT

---

Plaintiff Ares Management LLC ("Ares") alleges the following:

### Nature of the Action

1.      This is an action for trademark infringement, unfair competition, cybersquatting, and civil conspiracy arising out of Defendants' intentional and unlawful use of the mark "ARES" to promote and solicit investors in an alleged cryptocurrency platform and related goods and services under the names "Ares," "AresCoin," "AresBots," and "AreszCoin," among others, and through registration and use of the domain names AresCoin.io, AresBots.io, and AreszCoin.com. Defendants have advertised and promoted their businesses, alleged goods and services, and domain names in a manner that is likely to cause confusion, mistake, and deceive the public into believing that Defendants and their goods and services are somehow sponsored, endorsed, or associated with Ares. The likelihood of confusion is compounded by Defendants' uses of Ares's

trademarks and trade name in the same field that Ares has used the trademarks and trade name for over twenty years—financial services. Defendants' trademark infringement, unfair competition, and cybersquatting have damaged Ares's valuable trademarks and the goodwill it has labored substantially to generate over more than two decades. Ares seeks permanent injunctive relief enjoining Defendants' wrongful conduct, as well as any and all appropriate monetary remedies.

## The Parties

2.      Plaintiff Ares is a Delaware Limited Liability Corporation with its principal place of business located at 2000 Avenue of the Stars #1200, Los Angeles, CA 90067.

3.      Defendant Starlight Capital Group, Inc. is a Colorado Corporation with its principal place of business located at 4950 S. Yosemite, F2 #117, Greenwood Village, CO 80111.

4.      Defendant Registrant of StarCapitalCorp.com is a business or individual whose actual name is currently unconfirmed and whose true address is currently unknown. Defendant Registrant of StarCapitalCorp.com has failed to provide publicly-available contact information via its domain name registrar. Based on information and belief, Defendant Registrant of StarCapitalCorp.com is the registrant, creator, and operator of the website associated with the domain name StarCapitalCorp.com and, at all relevant times herein, has been engaged in the use of Ares's trademarks in this judicial district and throughout the United States. Defendant Registrant of StarCapitalCorp.com represents on the website www.starcapitalcorp.com that its principal place of business is Granite Tower 1099 18th St. Denver, CO 80202.

5.      Defendant Registrant of AresCoin.io is a business or individual whose actual name is currently unconfirmed and whose true address is currently unknown. Defendant

Registrant of AresCoin.io has engaged WhoisGuard as a proxy to anonymize its publicly-available information with its domain name registrar. Based on information and belief, Defendant Registrant of AresCoin.io is the registrant, creator, and operator of the website associated with the domain name AresCoin.io and, at all relevant times herein, has engaged in the use of Ares's trademarks in this judicial district and throughout the United States.

6.      Defendant AresCoin is a business, individual, or association of individuals whose true address is currently unknown. At all times relevant herein, Defendant AresCoin has engaged in the use of Ares's trademarks in this judicial district and throughout the United States. Based on information and belief, Defendant AresCoin is not registered to do business in any state. If necessary, Ares will seek leave of Court to amend this Complaint to further identify Defendant AresCoin when such identifying information has been ascertained.

7.      Defendant Registrant of AresBots.io is a business or individual whose actual name is currently unconfirmed and whose true address is currently unknown. Defendant Registrant of AresBots.io has engaged a WHOIS Privacy Service, WhoisGuard, Inc., as a proxy to anonymize its publicly-available information provided by its domain name registrar. Based on information and belief, Defendant Registrant of AresBots.io is the registrant, creator, and operator of the website associated with the domain name AresBots.io and, at all relevant times herein, has engaged in the use of Ares's trademarks in this judicial district and throughout the United States.

8.      Defendant AresBots is a business, individual, or association of individuals whose true address is currently unknown. At all times relevant herein, Defendant AresBots has engaged in the use of Ares's trademarks in this judicial district and throughout the United States. Based on information and belief, Defendant AresBots is not registered to do business in any state. If

necessary, Ares will seek leave of Court to amend this Complaint to further identify Defendant AresBots when such identifying information has been ascertained.

9.      Defendant Registrant of AreszCoin.com is a business or individual whose actual name is currently unconfirmed. Defendant Registrant of AreszCoin.com has identified itself as "aresz coin" to its domain name registrar, and has represented that its address is 20/17 Hong Kong Kowloon Bay 999077 Hong Kong. Based upon information and belief, the physical address in Hong Kong that AreszCoin has provided is not an actual location. Defendant Registrant of AreszCoin.com is the registrant, creator, and operator of the website associated with the domain name AreszCoin.com and, at all relevant times herein, has engaged in the use of Ares's trademarks in this judicial district and throughout the United States.

10.     Defendant AreszCoin is a business, individual, or association of individuals whose true address is currently unknown. At all times relevant herein, Defendant AreszCoin has engaged in the use of Ares's trademarks in this judicial district and throughout the United States. Based on information and belief, Defendant AreszCoin is not registered to do business in any state. If necessary, Ares will seek leave of Court to amend this Complaint to further identify Defendant AreszCoin when such identifying information has been ascertained.

11.     Defendant Nicolas Flint is an individual whose true address is currently unknown. Based on information and belief, Flint resides and conducts business within the state of Colorado.

12.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 through 10 are unknown to Ares, which sues said Defendants by such fictitious names (the "DOE Defendants"). If necessary, Ares will seek leave to amend this Complaint to state their true names and capacities when they have

been ascertained. Ares is informed and believes and on that basis alleges that DOE Defendants are liable to Ares as a result of their participation in all or some of the acts set forth herein.

## Jurisdiction and Venue

13.     This is an action for trademark infringement, unfair competition, and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*; for violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); and for trademark infringement, unfair competition, civil conspiracy, and unjust enrichment under the laws of the State of Colorado.

14.     This Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), (c), (d) (the Lanham Act) and 28 U.S.C. §§ 1331, 1338, and 1367.  Ares's state statutory and common law claims for trademark infringement and unfair competition are joined with substantial and related claims under the federal trademark laws, and this Court has jurisdiction over those claims pursuant to 28 U.S.C. § 1338(b).

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Ares's claims occurred in this district.

## FACTS RELEVANT TO ALL CLAIMS

### A.  ARES® Brand and Intellectual Property

14.     Ares is one of the largest global alternative asset managers in the United States and a SEC-registered investment adviser with approximately $131 billion of assets under management and over 1,000 employees. Ares has offices throughout the United States, Europe, and Asia.

15.     Ares has adopted and used the mark and trade name ARES continuously since at least September 1997 in the field of financial services, namely, investment advisory and

investment management services for equity and credit-oriented pooled investment vehicles, private investment funds, and investment accounts.

16.    Ares is the owner of a well-established family of 105 famous trademarks that are registered or pending registration around the world, including the following, for which it has federal trademark registrations or applications with the United States Patent and Trademark Office:

| MARK | Filing Date | Registration/ Application No. | Goods and Services |
|---|---|---|---|
| ⊘ ARES | 7/12/2010 | Registration No. 3,925,367 | 36 – Financial services, namely investment advisory and investment management services for pooled investment vehicles, private investment funds, and investment accounts; investment management |
| ARES | 7/22/2004 | Registration No. 3,014,171 | 36 – Investment management |
| ARES CAPITAL | 7/12/2010 | Registration No. 3,925,364 | 36 – Financial services, namely investment advisory and investment management services for pooled investment vehicles, private investment funds, and investment accounts; investment management |
| ARES CAPITAL MANAGEMENT | 7/12/2010 | Registration No. 3,925,365 | 36 – Financial services, namely investment advisory and investment management services for pooled investment vehicles, private investment funds, and investment accounts; investment management |
| ARES MANAGEMENT | 7/12/2010 | Registration No. 3,925,366 | 36 – Financial services, namely investment advisory and investment |

| MARK | Filing Date | Registration/ Application No. | Goods and Services |
|---|---|---|---|
| | | | management services for pooled investment vehicles, private investment funds, and investment accounts; investment management |
| ARES COMMERCIAL REAL ESTATE | 2/27/2012 | Registration No. 4,307,815 | 36: Commercial real estate finance services, namely, providing capital for the acquisition, development and management of commercial real estate, arranging financing and management of funds that provide capital for the acquisition, development and management of commercial real estate, commercial mortgage loan servicing and management of commercial real estate assets and investments. |
| ACRE ARES COMMERCIAL REAL ESTATE | 10/1/2015 | Application No. 86/775,662 | 36 – Commercial real estate finance services, namely, providing capital for the acquisition, development and management of commercial real estate, arranging financing and management of funds that provide capital for the acquisition, development and management of commercial real estate, and management of financial assets and investments in the nature of commercial real estate. |

17.    Ares also maintains numerous trademark registrations in dozens of countries around the world, including Hong Kong and China.

18.    All of the registrations listed above are valid, incontestable, subsisting, unrevoked and uncancelled. The registration of these marks constitutes prima facie evidence of their validity and conclusive evidence of Ares's exclusive right to use the ARES trademarks and trade name in commerce in connection with the services named therein. The registration of the marks also constitutes constructive notice to Defendants of Ares's ownership and exclusive rights in the ARES trademarks.

19.    Ares also owns common law rights in the ARES marks and trade name, which together with the registered trademarks are collectively the "ARES Marks."

20.    Since March 2002, Ares has owned the website https://www.aresmgmt.com/, and since at least 2007, Ares has also promoted and offered services through its website. Ares investors regularly use the website to access Ares's services, and a large percentage of Ares's business is generated through website traffic. In addition to https://www.aresmgmt.com/, Ares owns 150 domain names that incorporate the ARES Marks, including aresmanagement.com, aresmgmt.com, areshk.com, arescapitaladvisors.com, arestechnologygroup.com, arescapitalasia.com, arescapitaleurope.co.uk, arescapitaleurope.com, arescapitalpartners.com, aresgroup.com, aresasia.com, arecc.com, arescorp.com, arescrc.com, arescube.com, and areschina.com.tw.

21.    In addition, Ares promotes its brand through social media platforms using the ARES Marks, including Facebook and Twitter.

22.    Ares prominently uses the ARES Marks in its advertising and promotional materials. Ares has spent substantial amounts in advertising and promoting the ARES Marks in

connection with the financial services that Ares offers. The continuous and broad use of the ARES Marks has brought Ares widespread fame, and has made the ARES Marks themselves famous and widely-recognized marks in the financial services industry. The ARES Marks are famous not only within the United States but throughout the world, entitling them to the greater protection afforded marks with such international distinction under both United States law and International Treaties, such as the Paris Convention and the Trade-Related Aspects of Intellectual Property Rights (the "TRIPS Agreement"), both of which were entered into by the United States.

23.     Customers and the public in general associate the Ares brand and ARES Marks with high-quality financial services, including SEC-registered premium investment and lending opportunities for small and medium sized companies. Customers and the public in general recognize that ARES branded services are offered exclusively by Ares. Consequently, Ares has acquired and enjoys an outstanding reputation and significant goodwill associated with the ARES Marks.

24.     Ares aggressively protects and polices the valuable ARES Marks and has made significant investments in maintaining the quality of the Ares brand.

**B. Defendants' Unauthorized Use Of The ARES Marks**

25.     Defendants are using, without authorization, the ARES Marks to market, promote, and solicit investors in an alleged cryptocurrency platform, which Defendants offer by the name of "ARES" and/or "AresCoin" and/or "AreszCoin," and allegedly includes a cryptocurrency coin, an "algorithmic cryptocurrency arbitrate bot for cryptocurrency investors," and related products and services.  Defendants' concerted unlawful use of the ARES Marks is seen across websites and social media channels owned and/or operated by them, and extends to public

representations and sales offerings that unlawfully use the ARES Marks to profit from Ares's worldwide reputation and substantial goodwill.

### 1.  The Website www.arescoin.io

26.    Based on information and belief, Defendants began operating the website www.arescoin.io in or around October 2017. Defendants use the website to promote and solicit investors in their alleged cryptocurrency platform.

27.    In a White Paper accessible on the website www.arescoin.io, Defendants describe "ARES" as "an entire Crypto-Asset ecosystem through the key concept of 'Digital Asset Systemization.'" Defendants state in the White Paper that the "Initial Coin Offering" for the alleged cryptocurrency is "presented by Starlight Capital" and is an "unregulated fundraising operation. It poses several risks to buyers, in particular, that of losing all amounts traded for ARES." Buyers are asked to "acknowledge and agree that there are risks associated with purchasing, holding, and using ARES in connection with [Starlight Capital's] product, services and platform developed for such products and/or services . . . ."

28.    As can be seen from the website www.arescoin.io, Defendants are not only unlawfully using Ares's exact trade name and trademark "ARES," but Defendants have imitated the very font that Ares employs in its protected ARES Marks:



When compared side-by-side with Ares's mark, it is clear that Defendants are using an identical mark, the word "Ares," and font to promote their financial products and services. Defendants use the same font as Ares, in a blue color and upper-case letters, and also use a circular design logo with the word "Ares," just as Ares does in its use of the ARES Marks:

Defendants' unauthorized use:                    Ares's mark:




The word "coin" does nothing to distinguish Defendants' infringing use from Ares' use of the ARES Marks, particularly because Defendants are using the ARES Marks to market and solicit investors in financial services, just as Ares itself does.

29.    Defendants further promote "services" on the website www.arescoin.io that are allegedly part of Defendants' cryptocurrency "platform" and also unlawfully use the ARES Marks, including the exact mark and trade name "Ares":

- "AresBlock," an alleged "new Blockchain 4.0 with focus on inclusive, Integrated, and Intelligence Blockchain";

- "AresX," an alleged "global exchange with clearing house mechanisms to accommodate global liquidity";

- "AresPay," an alleged "Unified Payment Solution, that can pay any merchant regardless of the payment solution used";

- "Ares 2.0," alleged "[a]rtificial Intelligence powered trading bots"; and

- Uses of the identical mark and trade name "Ares" throughout the website and the White Paper.

30.    These unlawful uses of the ARES Marks are seen on the website www.arescoin.io and utilized throughout Defendants' White Paper. Examples of these unlawful uses are shown below:









## ARES

ARES, the revolutionary algorithmic crypto arbitrage bot for crypto investors. The value proposal is underpinned by long standing performing trading bots running on a variety of highly liquid assets. ARES will benefit from a large range of existing trading systems developed by an experienced team in financial markets.

## Foreword

This document describes the project of creating an entire Crypto-Asset ecosystem through the key concept of "Digital Asset Systemization". This project will be combining the best innovative solutions for the modern cryptocurrency and blockchain realm which will become a key driver of the global economy in the near future. After successful implementation, ARES has the potential to become a global financial ecosystem that can effectively "live" in two worlds – the traditional and digital, gradually erasing the line between them. ARES functionality is based on our very own blockchain platform.

## Disclaimer

This draft White Paper is for discussion and pre-information purposes only. The information contained herein is subject to change. No part of this White Paper is legally binding or enforceable, nor is it meant to be, until it has been discussed, reviewed and revised by ARES's board of advisors and lawyers. Please do not copy or disseminate any part of this White Paper without including this disclaimer. The final version of this White Paper will be published as soon as adopted.

The Initial Coin Offering (hereafter, the "ICO") project presented by Starlight Capital (hereafter, the "Company") is an unregulated fundraising operation. It poses several risks to buyers, in particular, that of losing all amounts traded for ARES. You acknowledge and agree that there are risks associated with purchasing, holding, and using ARES in connection with the Company's product, services and platform developed for such products and/or services (hereafter, the "Platform"), as disclosed and explained in this White Paper. If you have any questions regarding these risks, please do not hesitate to contact us.

BY PURCHASING ARES, YOU EXPRESSLY ACKNOWLEDGE AND ASSUME THESE RISKS. Only people who are fully aware of these risks should participate in the ICO. Note also that the ICO excludes certain groups of people such as "U.S. Person" (within the meaning of "Regulation S" of the Securities Act 1933 under U.S. law) and private individual acting on a non-professional basis as a simple consumer (within the meaning of EU Directive 2011/83/EU of the European Parliament and of the Council of 25 October 2011 on consumer rights).

31.    Defendant Flint is the "Founder" of AresCoin:



**2.  The Website www.aresbots.io**

30.    Based on information and belief, Defendants began operating the website

www.aresbots.io in or around October 2017. Defendants use the website to promote the sale of

"ARES 2.0," a "Java-based algorithmic trading platform that enables trading firms to rapidly

develop, stimulate, deploy and automate any quantitative trading strategy for any market."

Based on information and belief, "ARES 2.0" is part of the same alleged cryptocurrency

platform that Defendants market and promote on the website www.arescoin.io.

31.    As on the website www.arescoin.io, on the website www.aresbots.io Defendants

are not only unlawfully using Ares's exact trade name and trademark "ARES," but Defendants

have imitated the very font that Ares employs in its protected ARES Marks to unlawfully

promote Defendants' products and financial services:







When compared side-by-side with Ares's mark, it is clear that Defendants are using an identical mark, the word "Ares," and font to promote their financial products and services. Defendants use the same font as Ares, in a blue color and upper-case letters, and also use a circular design logo to the left of the word "Ares," just as Ares does in its use of the ARES Marks:

Defendants' unauthorized use:                    Ares's mark:

                    

The word "bots" does nothing to distinguish Defendants' infringing use from Ares's own use of the ARES Marks.

30.     Defendants state on the website www.aresbots.io: "We, the programmers would like to remain anonymous but Starlight Capital will be our main partner in distributing our rights of the Bots."

18

### 3. The Website www.starcapitalcorp.com

31.    Based on information and belief, Defendants began operating the website

www.starcapitalcorp.com in or around 2017. Defendants use the website to promote and solicit

investors in "digital currency," and "Crypto-Arbitrage."

32.    Defendants represent on the website www.starcapitalcorp.com that "Starlight

Capital" is "[b]ased in Colorado, United States," and Defendants provide an address in Denver,

Colorado:



33.    On the website www.starcapitalcorp.com Defendants unlawfully use the ARES Marks to promote "ARES 2.0."  Defendants describe the product as a "proprietary arbitrage system" that "executes symmetric trades in selected cryptocurrency and maximizes the dollar value of the fund. What makes ARES truly unique is its ability to track and pool IP addresses and their transactions into a predictive model for the recognition of any major market shifts – before they even occur."



34.    Defendant Flint is the "Head of Digital and Programming" for Starlight Capital Group. Based on information and belief, this Nicolas Flint is the same person as the "Nicolas Flint" identified on the website www.arescoin.io as the "Founder" of AresCoin.



### 4. The Website www.areszcoin.com

35.    Based on information and belief, Defendants began operating the website

www.areszcoin.com on December 3, 2017. Collectively, the websites www.arescoin.io,

www.aresbots.io, and www.areszcoin.com are referred to as the "Infringing Domains."

36.    On the website www.areszcoin.com, Defendants unlawfully use the ARES Marks

to promote "ARESZCOIN," an alleged "cryptocurrency."



37.     The connection between the website www.areszcoin.com and Defendants' other infringing activities can be clearly seen by examining Arezcoin's Facebook page, available through a link on the homepage of www.areszcoin.com. On Arezcoin's Facebook page, Defendants prominently advertise a "roadmap" outlining dates corresponding to an initial coin offering ("ICO"), launch of a "wallet," and an "Areszcoin Exchange," among other things:



38.     This "roadmap" is conspicuously similar to the "Roadmap" shown on the website www.arescoin.io, and it includes a payment platform—a "wallet"—like the infringing product or service "AresPay," and an "exchange," like the infringing service "AresX."



**5. Defendants' Other Unlawful Uses Of The ARES Marks**

39.     In addition to the foregoing, Defendants are unlawfully using the ARES Marks on social media platforms and in their overall public promotion and solicitation of investors in their alleged cryptocurrency platform.

40.     For example, the website www.arescoin.io links to pages on Twitter, YouTube, Reddit, and Vimeo. These pages blatantly use the ARES Marks without Ares's permission to market and solicit investors in Defendants' business and services.

**"Arescoin Official" on Twitter**:



**"Ares_Coin" on Reddit**:



---

1    Arescoin Official, Twitter, https://twitter.com/Ares_Coin, last accessed March 22, 2019.
2    Ares_Coin, Reddit, https://www.reddit.com/user/AresCoin/, last accessed March 22, 2019.

**"Arescoin Official" on Vimeo:**



**"Arescoin Official" on YouTube:**



---

3      Arescoin Official, VIMEO, https://vimeo.com/arescoinofficial, last accessed March 22, 2019.

4      Arescoin Official, YOUTUBE, https://www.youtube.com/channel/UCyRCdpzG3dMSHKV4YTIGrCg, last accessed March 22, 2019.

41.     The website www.starcapitalcorp.com links to a Facebook page that unlawfully uses the ARES Mark without Ares's permission to market and solicit investors in Defendants' goods and services:



42.     The website www.areszcoin.com links to a Facebook page (also depicted *supra* ¶ 37) that unlawfully uses the ARES Marks without Ares's permission to market and solicit investors in Defendants' goods and services:

---

[5]     Starlight Capital Group, FACEBOOK, https://www.facebook.com/StarlightCapitalGroup/, last accessed March 22, 2019.



43.     The website www.areszcoin.com also links to a Twitter page that unlawfully uses the ARES Marks to solicit investors in Defendants' goods and services, including an alleged "cryptocurrency," "lending program," and "internal exchange":

---

6       Areszcoin, FACEBOOK, https://www.facebook.com/pages/category/Community/Areszcoin-170560223530481/, last accessed March 22, 2019.



44.     Based on information and belief, Defendants also use the ARES Marks to promote their alleged cryptocurrency platform in Spanish on the Facebook page "AresCoin ICO," which has identical branding to the website www.areszcoin.com and advertises Defendants' alleged "roadmap," also displayed on www.areszcoin.com, that is similar to the "roadmap" displayed on www.arescoin.io:

---



45.     Defendants have further used the ARES Marks without Ares's permission in countless public presentations and at events promoting their alleged cryptocurrency platform. For example, on May 21, 2018 Starlight Capital Group, represented by Defendant Flint, held a press conference at the Ritz Carlton in Denver, Colorado announcing that an initial coin offering for "ARESCOIN" would take place on June 19, 2018.[9]

46.     Based on information and belief, in or around May 2018, Defendants, including Defendant Flint personally, promoted Starlight Capital Group's alleged goods and services "ARESBLOCK," "ARESX," "ARESPAY," and "ARESCOIN" at the 7th China Forex Expo

---

[8]     AresCoin ICO, FACEBOOK, https://www.facebook.com/pages/category/Science--Technology---Engineering/AresCoin-Ico-298137160675645/, last accessed November 30, 2018.

[9]     *See* Arescoin Official, *Arescoin 2018 – Announcement of Public Token Sales Launch*, YOUTUBE.COM (June 5, 2018), https://www.youtube.com/watch?v=oPhYwUdWe2o.

iBlockchain Summit. Defendants continue to publicize this unauthorized use of the ARES Marks

on their YouTube channel today:





47.    Defendants have additionally issued numerous press releases that use the ARES Marks without Ares's permission and attempt to profit from its substantial goodwill by connecting Defendants' goods and services with Ares in the public eye.

48.    Defendants' unlawful uses of the ARES Marks and efforts to unlawfully profit from and misappropriate Ares's reputation and substantial goodwill are referred to as the "Infringing Uses."

49.    The similarity between Defendants' Infringing Uses and the ARES Marks is readily apparent. The principal component of Defendants' alleged cryptocurrency platform is the trade name "Ares", which Defendants use to offer investment services, as Ares has done itself since at least 1997.  The Infringing Domains prominently feature the ARES Marks both in their uniform resource locator and across the web pages on the domains.

---

[10]    *See* Arescoin Official, *The 7th China Forex Expo iBlockchain Summit*, YOUTUBE.COM (July 6, 2018), https://www.youtube.com/watch?v=y64-gp3oDDk.

50.    Defendants, without any authorization or license from Ares, have knowingly and willfully used the ARES Marks in connection with the advertisement and offering of financial services in interstate, intrastate, and international commerce, including commerce in the State of Colorado and in this judicial district, which directly infringes Ares's rights.

51.    Defendants' Infringing Uses have harmed Ares's rights in the ARES Marks. Defendants' Infringing Uses have harmed Ares's reputation as a source of high-quality financial services, including SEC-registered premium investment and lending opportunities.

    a.    Unlike Ares, Defendants disclose in their White Paper that their financial services are unregulated, and Defendants proudly advertise on www.aresbots.io that they are actively seeking to avoid the reach of "authorities, regulations, and taxes" to their cryptocurrency platform that they unlawfully market by the name of "Ares." Defendants' unlawful use of the ARES Marks throughout the marketing and promotion of their cryptocurrency platform will cause the public to believe that Ares itself is operating as a rogue financial service provider that is attempting to thwart the SEC's purview.

    b.    Moreover, the Infringing Uses are on goods and services that the public has come to associate with deceptive practices. For example, users of the website www.steemit.com have publicly reported that the goods and services offered on www.areszcoin.com appear to be a "scam":



11     Aoife, *Is Arescoin Scam or Not?*, STEEMIT.COM, https://steemit.com/ares/@aoife12/is-arescoin-scam-or-not, last accessed November 5, 2018.

c.  AreszCoin has itself reported on its Twitter page that a mobile application by the name of "Areszcoin" is a "scammer":



13

d.  Defendants' Infringing Uses will cause the public to believe that Ares's goods and services are a "scam."

e.  Moreover, Defendants have used the ARES Marks to commit fraud. Defendants have falsely represented to the public that the venture capital firm AI8 has invested in AresCoin, for the purpose of deceiving the public into believing that Defendants' cryptocurrency platform is a credible and reliable financial service:

---

12    Jamesqpham, *AresZcoin Will It Hit $30 Or is It A Scam? EPS 20*, Steemit.com, https://steemit.com/ico/@jamesqpham/areszcoin-will-it-hit-usd30-or-is-it-a-scam-eps-20, last accessed March 22, 2019.
13    Areszcoin, Twitter, https://twitter.com/areszcoin_ico?lang=en, last accessed March 22, 2019.



---

14     Crystal Moore, *ARESCOIN Receives Investments from Silicon-valley Based VC Firm*, COINANNOUNCER.COM (Mar. 29, 2018), https://www.coinannouncer.com/arescoin-receives-investments-from-silicon-valley-based-vc-firm/.

Ares is informed and believes, and based thereon alleges, that AI8 has not invested in AresCoin, and Dion DeLoof has no relationship with Defendants or AresCoin.

52.    Defendants, without any authorization or license from Ares, have knowingly and willfully used the ARES Marks in connection with the operation of the Infringing Domains, through which Defendants' infringement of the ARES Marks occurs.

53.    Defendants' knowing and willful infringement of Ares's rights in the ARES Marks is further shown by their failure to respond to Ares's attempts to stop the Infringing Uses. On March 23, 2018, Ares sent a cease and desist letter to Defendant Starlight Capital Group at the address identified on the website www.starcapitalcorp.com, demanding that it cease use of the ARES Marks and transfer the domain arescoin.io to Ares. No Defendants responded to this letter. On March 18, 2019, Ares sent cease and desist letters to the addresses that Defendant Starlight Capital Group has provided to the Colorado Secretary of State as its principal place of business and registered agent for service of process. No Defendants responded to these letters.

54.    On August 27, 2018, Ares sent a second cease and desist letter to the email address identified on the website www.arescoin.io to the attention of Defendant AresCoin's alleged "Legal Counsel," "Ravindra Sumeet," demanding that Defendant AresCoin cease use of the ARES Marks and transfer the domain arescoin.io to Ares. No Defendants responded to this letter.

55.    On November 13, 2018, Ares sent a cease and desist letter to the email address of the domain name registrar for www.areszcoin.com, demanding that Defendant AreszCoin cease use of the ARES Marks and transfer the domain areszcoin.com to Ares. The letter was sent to the domain name registrar because, at the time, AreszCoin had not provided contact information to

its domain name registrar for www.areszcoin.com, which Ares informed the registrar was a violation of the Internet Corporation for Assigned Names & Numbers' Rules. On November 26, 2018, Ares received confirmation that the cease and desist letter was received by the domain name registrar for www.areszcoin.com. No Defendant has responded to the letter. However, AreszCoin has since updated its contact information with the domain name registrar for www.areszcoin.com, indicating that it received the letter, but it has not ceased its Infringing Uses. On March 5, 2019, Ares sent a cease and desist letter to AreszCoin at its newly-provided address and email address. No Defendant has responded to Ares's March 5, 2019 cease and desist letter.

56.    Defendants' Infringing Uses of the ARES Marks and use of the Infringing Domains in connection with the advertising, marketing, distribution, and offering for sale and sale of financial services it likely to cause confusion, mistake, and/or deceive the public by exploiting and tarnishing the Ares brand.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114

57.    Ares repeats and realleges each allegation set forth in paragraphs 1 - 56 above as if fully set forth herein.

58.    Defendants either had actual notice and knowledge, or had constructive notice, of Ares's ownership and registration of the ARES Marks pursuant to 15 U.S.C. § 1072, prior to Defendants' adoption and use of the ARES Marks in connection with the sale, offering for sale, distribution, and advertising of services.

59.    Defendants, without Ares's authorization, deliberately used the ARES Marks in connection with their goods and services, and have offered for sale in this District and throughout the United States goods and services using the ARES Marks.

60.    Defendants' unauthorized use of the ARES Marks falsely indicates to consumers that Defendants' goods and services are in some manner connected with, sponsored by, affiliated with, or related to Ares and the services Ares offers.

61.    As described above, Defendants' unauthorized use of the ARES Marks is likely to cause confusion, mistake, and to deceive consumers as to the source, nature, and quality of the goods and services Defendants are promoting or selling in violation of 15 U.S.C. § 1114.

62.    Defendants' unauthorized use of the ARES Marks in connection with the offering for sale of goods and services allows Defendants to receive the benefit of the goodwill established at great labor and expense by Ares, and to gain acceptance of Defendants' goods and services, not based on the merits of those goods and services, but, rather, on Ares's reputation and goodwill.

63.    Ares has suffered or will suffer actual monetary damages based on Defendants' unauthorized uses of the ARES Marks, including lost profits and impairment of the value of the ARES Marks.

64.    Ares has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, Ares will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Ares has no adequate remedy at law.

65.    Upon information and belief, Defendants acted with full knowledge of Ares's rights and with intention to usurp such rights. Defendants' conduct is therefore willful and intentional.

## COUNT II
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### 15 U.S.C. § 1125(a)

66.     Ares repeats and realleges each allegation set forth in paragraphs 1 - 56 above as if fully set forth herein.

67.      The ARES Marks have acquired secondary meaning among the consuming public, including but not limited to among Ares's customers.

68.     Defendants' unauthorized use in commerce of the ARES Marks falsely suggests that their goods and services are connected with, sponsored by, affiliated with, or related to Ares, and constitutes false designation of origin which has and is likely to cause further confusion, mistake, or to deceive consumers as to the origin, sponsorship, or approval of Defendants' goods and services in violation 15 U.S.C. § 1125(a).

69.     Defendants' unauthorized use of the ARES Marks facilitates the acceptance of Defendants' goods and services not based on the merits of those goods and services, but on Ares's reputation and goodwill.

70.     Defendants' conduct deprives Ares of the ability to control the quality of the services marketed under the ARES Marks, and, instead, places Ares's valuable reputation and goodwill into the hands of Defendants, over which Ares has no control.

71.     Upon information and belief, as a result of Defendants' unauthorized uses of the ARES Marks, Defendants seek to obtain profits to which they are not entitled, and Ares has suffered or will suffer actual monetary damages, including lost profits and impairment of the value of the ARES Marks.

72.     Ares has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, Ares will suffer further harm

to its name, reputation, and goodwill. This harm constitutes an injury for which Ares has no adequate remedy at law.

73.    Upon information and belief, Defendants acted with full knowledge of Ares's rights and with the intention to usurp such rights. Defendants' acts are therefore willful and intentional.

## COUNT III
## TRADEMARK DILUTION
## 15 U.S.C. § 1125(c)

74.    Ares repeats and realleges each allegation set forth in paragraphs 1 – 56 above as if fully set forth herein.

75.    The ARES Marks are, as described above, famous marks that are widely recognized by consumers within the meaning of 15 U.S.C. § 1125(c)(2), based on Ares's extensive advertising and promotion of its services using the ARES Marks for over twenty years. The ARES Marks are recognized by the general consuming public of the United States as designators of source for Ares and its business.

76.    As described above, Defendants have made and are making use of the ARES Marks in connection with goods and services that Defendants sell in interstate commerce.

77.    Defendants' unauthorized use of the ARES Marks began after the ARES Marks had become famous.

78.    Defendants' unauthorized use of the ARES Marks has diluted and is diluting the distinctive quality of Ares's famous ARES Marks, thereby lessening their capacity to identify and distinguish the services marketed and sold by Ares with the goods and services marketed and sold by Defendants in violation of 15 U.S.C. § 1125(c).

79.    Defendants' unauthorized use of the ARES Marks has tarnished Ares's famous ARES Marks. Specifically, consumers will believe that Ares's assets are no longer invested in a

diverse portfolio of quality credit, private equity, and real estate groups with a methodology that has been tested over the past twenty years and is regulated by the SEC, but are now funneled into Defendants' "unregulated fundraising operation" in "[c]rypto-arbitrage" that, as Defendants concede, poses significant risk to would-be investors and which Defendants seek to operate outside the reach of "authorities, regulations, and taxes." Consumers will also believe that the ARES Marks are associated with deceptive goods and services that are known to "scam" investors. As a result of Defendants' use of the ARES Marks to make fraudulent misrepresentations regarding investments from AI8 into AresCoin, consumers will be deceived into believing that Defendants' services are legitimate and credible, which, based on information and belief, they are not.

80.     Ares has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, Ares will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Ares has no adequate remedy at law.

81.     Upon information and belief, Defendants acted with full knowledge of Ares's rights and with the intention to trade on the goodwill and recognition of the ARES Marks. Defendants' acts are therefore willful and intentional.

## COUNT IV
### COUNTERFEITING
### 15 U.S.C. § 1114(1)(a)

82.     Ares repeats and realleges each allegation set forth in paragraphs 1 - 56 above as if fully set forth herein.

83.     Defendants have, without Ares's authorization, deliberately used a mark that is substantially indistinguishable from the ARES Mark to promote their financial goods and services. These spurious uses of the ARES Marks are seen throughout Defendants' White Paper,

in which they use the word "Ares" to describe their goods and services, throughout their social media pages, and on the websites www.arescoin.io and www.aresbots.io, on which they use the mark "Ares" to describe their goods and services in an appearance that deliberately imitates

Ares's mark, :

www.aresbots.io:                 www.arescoin.io:





84.    Ares has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, Ares will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Ares has no adequate remedy at law.

85.    Upon information and belief, Defendants acted with full knowledge of Ares's rights and with the intention to cause confusion, mistake, or deceive as to the source and origin of Defendants' goods and services. Defendants' acts are therefore willful and intentional.

## COUNT V
## CYBERSQUATTING
### 15 U.S.C. § 1125(d)(1)

86.     Ares repeats and realleges each allegation set forth in paragraphs 1 - 56 above as if fully set forth herein.

87.     The ARES Marks, as described above, were famous and distinctive before 2017, based on Ares's extensive advertising and promotion of its services using the ARES Marks for over twenty years.

88.     The Infringing Domains, by their use of the ARES Marks, are confusingly similar to the ARES Marks.

89.     Defendants had bad faith intent to profit from the ARES Marks when they registered the Infringing Domains and in their continued uses of the Infringing Domains. Defendants had actual or constructive notice of Ares's rights in the ARES Marks prior to registration of the Infringing Domains pursuant to 15 U.S.C. § 1072 and after Ares sent multiple cease and desist letters to Defendants. Notwithstanding their actual or constructive notice of Ares's rights, they proceeded to adopt and use the ARES Marks in the Infringing Domains in violation of 15 U.S.C. § 1125(d)(1)(A).

90.     Moreover, a rebuttal presumption that Defendants willfully violated Ares's rights attaches pursuant to 15 U.S.C. § 1117(e) because Defendants, including AreszCoin and Registrant of AreszCoin, knowingly failed to provide contact information, and/or provided false contact information to their domain name registrar for the domain name www.areszcoin.com.

91.     Based on information and belief, Defendants intended to divert consumers from Ares's own websites to the Infringing Domains for commercial gain and with the intent to tarnish the ARES Marks. The diversion of Ares's customers to the Infringing Domains will harm the goodwill associated with the ARES Marks and Ares's reputation because Defendants, unlike

Ares—a SEC-registered investment advisor—offer unregulated investments in cryptocurrencies and cryptocurrency exchanges that proudly seek to avoid "authorities, regulations, and taxes" through the Infringing Domains and which the public has come to believe are "scam" products and services, which Defendants have fraudulently misrepresented are supported by investments from venture capital firms.

92.    Defendants' use of the Infringing Domains is likely to cause confusion, mistake, and to deceive consumers as to the source, sponsorship, affiliation, or endorsement of the Infringing Domains.

93.    Defendants have no trademark or other intellectual property rights in the Infringing Domains or the ARES Marks.

94.    Ares has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, Ares will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Ares has no adequate remedy at law.

95.    Defendants are causing and will continue to cause substantial injury to the public and to Ares, and Ares is therefore entitled to injunctive relief, including an order requiring transfer of the Infringing Domains to Ares.

96.    Upon information and belief, Defendants acted with full knowledge of Ares's rights and with the intention to usurp such rights. Defendants' acts are therefore willful and intentional.

<u>**COUNT VI**</u>
**TRADEMARK INFRINGEMENT UNDER COLORADO COMMON LAW**

97.    Ares repeats and realleges each allegation set forth in paragraphs 1 - 56 above as if fully set forth herein.

98.    Defendants, without Ares's authorization, deliberately used the ARES Marks in connection with their goods and services, and have offered for sale in this District and throughout the United States goods and services using the ARES Marks.

99.    Defendants' unauthorized use of the ARES Marks falsely indicates to consumers that Defendants' goods and services are in some manner connected with, sponsored by, affiliated with, or related to Ares and the services Ares offers.

100.    Defendants' conduct also constitutes an attempt to trade on the goodwill which Ares has developed.

101.    As described above, Defendants' unauthorized use of the ARES Marks is likely to cause confusion, mistake, and to deceive consumers as to the source, nature, and quality of the goods and services that Defendants offer in violation of Colorado common law.

102.    Ares has been, is now, and will be irreparably injured and damaged by Defendants' infringement, and unless enjoined by the Court, Ares will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Ares has no adequate remedy at law, entitling Ares to injunctive relief.

103.    Upon information and belief, Defendants acted with full knowledge of Ares's rights and with the intention to usurp such rights. Defendants' acts are therefore willful and intentional.

## <u>COUNT VII</u>
### UNFAIR COMPETITION UNDER COLORADO CONSUMER PROTECTION ACT, COLO. REV. STAT. § 6-1-105

104.    Ares repeats and realleges each allegation set forth in paragraphs 1 - 56 above as if fully set forth herein.

105.    Defendants, without Ares's authorization, deliberately used the ARES Marks in connection with their goods and services, and have offered for sale in this District and throughout the United States goods and services using the ARES Marks.

106.    Defendants, without Ares's authorization, have used the ARES Marks in the course of their alleged business soliciting investors in and operating an alleged cryptocurrency platform and offering for sale related products and services.

107.    Defendants' practices described herein significantly impact the public as actual or potential consumers of Defendants' goods and services. Specifically, Defendants have unlawfully used the ARES Marks to confuse and deceive the public regarding an affiliation between Ares and Defendants' alleged cryptocurrency platform and related goods and services. Defendants have engaged in these confusing and deceptive practices within Denver, Colorado and throughout the United States in violation of Colo. Rev. Stat. § 6-1-105.

108.    Defendants' practices have caused Ares harm, and, unless enjoined by the Court, Ares will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Ares has no adequate remedy at law, entitling Ares to injunctive relief.

<u>COUNT VIII</u>
**UNFAIR COMPETITION UNDER COLORADO COMMON LAW**

109.    Ares repeats and realleges each allegation set forth in paragraphs 1 - 56 above as if fully set forth herein.

110.    Defendants' use of the ARES Marks, without Ares's authorization, constitutes misappropriation of Ares's valuable property rights and business value. Defendants are trading on the goodwill symbolized by the distinctive and famous ARES Marks and Ares's reputation within the financial services industry, and Defendants are likely to confuse and deceive consumers by their actions in violation of Colorado's common law of unfair competition.

111.    Defendants' practices have caused Ares harm, and, unless enjoined by the Court, Ares will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Ares has no adequate remedy at law, entitling Ares to injunctive relief.

## COUNT IX
## CIVIL CONSPIRACY

112.    Ares repeats and realleges each allegation set forth in paragraphs 1 - 56 above as if fully set forth herein.

113.    Defendants' concerted and purposeful use of the ARES Marks without Ares's authorization constitutes a civil conspiracy to commit trademark infringement, counterfeiting, unfair competition, and cybersquatting under federal and Colorado law. Defendants are two or more persons that intend to use and unlawfully profit from the ARES Marks and Ares's reputation within the financial service industry and substantial goodwill by using the ARES Marks on the Infringing Domains and throughout Defendants' promotion and marketing of their alleged cryptocurrency platform and related goods and services.

114.    Defendants' meeting of the minds to violate Ares's rights is evidenced by their organized use of the ARES Marks across four websites, numerous social media channels, and throughout a public relations campaign promoting Defendants' alleged cryptocurrency platform and related goods and services. By way of example and not limitation, Defendants represent that Defendant Starlight Capital Group and/or Defendant Registrant of StarCapitalCorp.com is the medium through which consumers can invest in Defendants' cryptocurrency platform and Defendants AresCoin and AresBots. Defendant Flint holds himself out to the public as Defendants' representative at press conferences, financial services conferences, and other events and is identified as the "Founder" of Defendant AresCoin and "Head of Digital and Programming" for Defendant Starlight Capital Group.

115.    Defendants' practices have caused Ares harm, and, unless enjoined by the Court, Ares will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Ares has no adequate remedy at law, entitling Ares to injunctive relief.

## COUNT X
## UNJUST ENRICHMENT

116.    Ares repeats and realleges each allegation set forth in paragraphs 1 - 56 above as if fully set forth herein.

117.    Defendants' use of the ARES Marks, without Ares's authorization, has unjustly enriched Defendants. Defendants have confused consumers as to the source, nature, and quality of Defendants' goods and services; Defendants have caused consumers to believe that Ares is a source, sponsor, affiliate, or endorses Defendants' alleged cryptocurrency platform and related goods and services, which has resulted in sales to Defendants that were unjustly obtained.

118.    Allowing Defendants to retain the benefits they received by the unlawful use of the ARES Marks would be unjust.

119.    Defendants' practices have caused Ares harm for which Ares has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Ares prays for relief as follows:

1.    That Defendants, their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through or under them be preliminarily and permanently enjoined from:

    a.    using in any manner the ARES Marks, or any name, mark, logo, or trade name that incorporates the ARES Marks or is confusingly similar to or a colorable imitation of the ARES Marks;

        b.        doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public, or prospective customers of Ares's services, as to the source of the services offered for sale, distributed, or sold, or likely to deceive members of the public, or prospective customers, into believing that there is some connection between Ares and Defendants;

        c.        committing any acts that will tarnish, blur, or dilute, or are likely to tarnish, blur, or dilute the distinctive quality of the famous ARES Marks;

        d.        utilizing the Infringing Domains and registering, trafficking in, or using any additional domain names that use any of the ARES Marks, or any name, mark, logo, or trade name that incorporates the ARES Marks or is confusingly similar to or a colorable imitation of the ARES Marks;

        e.        operating the websites located at the Infringing Domains;

        f.        engaging in any other activity constituting unfair competition or infringement of the ARES Marks, or to use, or to exploit the same; and

        g.        assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (a) through (f) above.

2.     For entry of an order and judgment directing Defendants to issue a corrective action letter to all customers to whom Defendants have provided services, offered to provide services, or sold goods using the ARES Marks, notifying them that Defendants infringed the ARES Marks, belonging to Ares, in its offering of financial services;

3.     For entry of an order and judgment directing Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Ares within thirty (30) days after entry of the

injunction, a report in writing under oath setting forth in detail the manner and form in which Ares has complied with the injunction and ceased all offering of services under the ARES Marks, as set forth in paragraphs 1 and 2 above;

4.      For entry of an order and judgment directing Defendants, pursuant to 15 U.S.C. § 1118, to deliver up for destruction, or to show proof of said destruction or sufficient modification to eliminate the infringing matter, all catalogs, articles, packages, wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles or other matter in the possession, custody, or under the control of Defendants or their agents bearing the ARES Marks in any manner, or any mark, logo, or trade dress that is confusingly similar to or a colorable imitation of the ARES Marks;

5.      For entry of an order and judgment directing Defendants, pursuant to 15 U.S.C. § 1125(d)(1)(C), to transfer the Infringing Domains to Ares;

6.      For entry of an order and judgment directing the domain name registrars of the Infringing Domains, pursuant to 15 U.S.C. § 1125(d)(1)(C), to transfer the Infringing Domains to Ares;

7.      For an order finding that Defendants have infringed the ARES Marks in violation of the common law of trademark infringement of the State of Colorado;

8.      For an order finding that Defendants have unfairly competed with Ares by the acts complained of herein in violation of Colorado law;

9.      That the Court award statutory damages under 15 U.S.C. § 1117(d) for each Infringing Domain;

10.      That the Court award statutory damages under 15 U.S.C. § 1117(c);

11.     That the Court award treble damages and attorneys' fees under 15 U.S.C. § 1117(b);

12.     That the Court award enhanced damages under 15 U.S.C. § 1117 and punitive damages under state law as appropriate;

13.     That Defendants give a detailed accounting sufficient to determine damages during the infringement period;

14.     That the Court find this to be an exceptional case and award Ares reasonable attorneys' fees;

15.     That the Court award pre-judgment and post-judgment interest on any monetary awards;

16.     That the Court award Ares any other and further relief that the Court finds just and proper.

**PLAINTIFF HEREBY DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 25th day of March, 2019.

By: *s/ Tyler D. Coombe*
TYLER D. COOMBE (SBN 35478)
GREENBERG TRAURIG LLP
*CoombeT@gtlaw.com*
1200 17th Street, Suite 2400
Denver, CO 80202
Telephone: 303-572-6500
Facsimile: 303-572-6540

GREENBERG TRAURIG LLP
NINA D. BOYAJIAN (CA SBN 246415)
*BoyajianN@gtlaw.com*
REBEKAH S. GUYON (CA SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121

Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Plaintiff Ares Management LLC
2000 Avenue of the Stars #1200
Los Angeles, CA 90067