## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00894-RBJ

ARES MANAGEMENT LLC,

                Plaintiff,

vs.

STARLIGHT CAPITAL GROUP, INC., a
Colorado corporation, REGISTRANT OF
STARCAPITALCORP.COM,
REGISTRANT OF ARESCOIN.IO,
ARESCOIN, REGISTRANT OF
ARESBOTS.IO, ARESBOTS,
REGISTRANT OF ARESZCOIN.COM,
ARESZCOIN, NICHOLAS FLINT, and
DOES 1-10,

                Defendants.

---

## MOTION FOR ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION PURSUANT TO FED. R. CIV. P. 55(b)(2)

---

Plaintiff Ares Management LLC ("Ares"), pursuant to Fed. R. Civ. P. 55(b)(2), by and through its undersigned counsel, hereby moves for entry of a default judgment and permanent injunction against Defendants Starlight Capital Group, Inc., Registrant of StarCapitalCorp.com (Goh Jia De and Roland Lee), Registrant of AresCoin.io, AresCoin, Registrant of AresBots.io, AresBots, Registrant of AresZCoin.com, and AresZCoin (together, "Defendants").

Defendants engaged in trademark infringement, unfair competition, cybersquatting, and civil conspiracy arising out of their unlawful uses of the "ARES" mark and tradename to promote and solicit investors in an alleged cryptocurrency platform and related goods and services in violation of the Lanham Act, the Anticybersquatting Consumer Privacy Act (the "ACPA"), and Colorado law. ECF No. 1. Defendants' unauthorized, unlawful, and deceitful use of Ares's registered trademarks and

tradename were intended to mislead the public into believing that Defendants' alleged cryptocurrencies and related financial products and services were associated with the valuable and successful financial services that Ares has provided for more than 20 years.

None of the Defendants have responded to the Complaint, despite being properly served with process, and the time for any of the Defendants to respond has long passed. The Court entered default against Defendants on October 8, 2019 and October 31, 2019. ECF Nos. 29, 32. The Court should enter a default judgment against all Defendants. Because Ares has been, and will continue to be, irreparably harmed by Defendants' unauthorized, unlawful, and deceitful use of Ares's registered trademarks and tradename, the Court should also issue a permanent injunction.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

**Ares.** Ares is a Delaware LLC based in Los Angeles, California. Compl. ¶ 2. Ares is one of the largest global alternative asset managers in the U.S., with approximately $131 billion under management, more than 1,000 employees, and offices worldwide. *Id*. at ¶ 14.[1]  Ares has used the "ARES" mark and tradename continuously since at least September 1997 in connection with its investment advisory and investment management services for equity and credit-oriented pooled investment vehicles, private investment funds, and investment accounts. *Id*. at ¶ 15. Ares owns 105 famous trademarks, which are registered or pending registration around the world. *Id*. at ¶ 16. Ares also maintains numerous trademark registrations in dozens of countries around the world, including in Hong Kong and China. *Id*. at ¶ 17. Ares owns common law rights in the ARES marks and tradename (together with the registered trademarks, the "ARES Marks"). *Id*. at ¶ 19.

---

[1]    Inadvertently, page 2 of the Complaint contains two paragraphs 14 and 15. The citations to those paragraphs in this section are to the paragraphs under the "Facts" section of the Complaint, at the bottom of page 5.

Ares has owned the website, https://www.aresmgmt.com/, since March 2002, which Ares's investors use to access Ares's services; a large percentage of Ares's business is generated through website traffic. *Id*. at ¶ 20. Ares owns 150 domain names that incorporate the ARES Marks, including aresmanagement.com, aresmgmt.com, areshk.com, arescapitaladvisors.com, arestechnologygroup.com, arescapitalasia.com, arescapitaleurope.co.uk, arescapitaleurope.com, arescapitalpartners.com, aresgroup.com, aresasia.com, arescorp.com, and areschina.com.tw. *Id*.

Ares has spent substantial amounts in advertising and promoting its financial services that feature the ARES Marks, including on social media. *Id*. at ¶¶ 21-22. As a result, the Ares brand is associated with high-quality financial services, and Ares has acquired and enjoys an outstanding reputation and significant goodwill associated with the ARES Marks. *Id*. at ¶ 23.

**The Defendants.** Starlight Capital has its principal place of business in Colorado. *Id*. at ¶¶ 3-4. Flint is also a Colorado resident. *Id*. at ¶¶ 11, 45. After extensive investigation and motion practice, Ares has also located and confirmed the identities of the other Defendants. Registrant of StarCapitalCorp.com, AresCoin, Registrant of AresCoin.io, AresBots, and Registrant of AresBots.io are two individuals—Roland Lee and Goh Jia De. ECF No. 22-1 at ¶¶ 7(a), 14(a), 18(a); ECF No. 31-1 at ¶¶ 4, 6, ECF No. 31-1 at ¶ 7. Lee is located in the Cayman Islands, Singapore, Thailand, and/or Hong Kong. ECF No. 22-1, Ex. 3 at 37-41. Goh Jia De is located in Singapore. Declaration of Rebekah S. Guyon in Support of Ares's Motion for Default Judgment ("Guyon Default Judgment Decl."), Ex. 2. Registrant of AresZCoin.com and AresZCoin are an entity or individual operating under the pseudonym "cashtocoin," located in Northern Thailand. *Id*. at ¶ 25.[2] Registrants of AresCoin.io and AresBots.io have hidden their true identities via a privacy protect service. Compl. ¶¶ 4-11.

---

[2]    Registrant of AreszCoin.com also represented that it was located in Hong Kong, but the address it provided is not a real location. Compl. ¶ 9; ECF No. 22-1 ¶ 23, Ex. 13.

Defendants have used the ARES Marks without authorization to market, promote, and solicit investors in their alleged cryptocurrency platform and related financial products and services. *Id*. at ¶ 25. Specifically, Defendants operate three websites, AresCoin.io, AresBots.io, and AreszCoin.com (the "Infringing Domains"), which unlawfully use Ares's exact trade name and mark—including imitating the font Ares employs in its protected ARES Marks—to promote and solicit investors in Defendants' alleged cryptocurrency platform. *Id*. at ¶¶ 26-38. Defendants also operate StarCapitalCorp.com, which unlawfully uses the ARES Marks to promote "ARES 2.0," an alleged cryptocurrency platform. *Id*. at ¶ 33. Flint is the "Founder" of AresCoin and the "Head of Digital and Programming" for Starlight Capital. *Id*. at ¶¶ 31, 34.[3]

Defendants have *also* been unlawfully using the ARES Marks on social media platforms (including on Twitter and YouTube), in press releases, and at presentations and events in Colorado and China, among other locations. *Id*. at ¶¶ 39-47. These unlawful uses of the ARES Marks and Defendants' efforts to unlawfully profit from Ares's goodwill are called the "Infringing Uses."

Following its discovery of Defendants' infringement of the ARES Marks, Ares sent multiple cease and desist letters: in March, August, and November 2018, and in March 2019. *Id*. at ¶¶ 53-55. Not one of the Defendants responded to the cease and desist letters. *Id*.

### B. Procedural Background

On March 25, 2019, Ares filed its Complaint, seeking injunctive and monetary relief arising out of Defendants' Infringing Uses, in violation of the Lanham Act, the ACPA, and Colorado law. ECF No. 1. Ares served Starlight Capital on July 23, 2019, via personal service on its registered agent in Boulder, Colorado. ECF No. 21. Starlight Capital did not respond.

---

[3]     Inadvertently, paragraph 31 is repeated in the Complaint. This citation refers to paragraph 31 at the top of page 16 of the Complaint.

Ares then moved for expedited discovery and additional time to serve the remaining Defendants; the Court granted the motion. ECF No. 18. The Court then extended the service deadline until October 28, and authorized Ares to serve these Defendants via email. ECF No. 23. Ares served these Defendants by email on August 27. ECF Nos. 24-27. No Defendants responded to the Complaint, and, on October 8, the Court entered default. ECF No. 29.

In the meantime, on August 1, 2019, Ares served Sedo.com, LLC, which Ares believed to be the Registrant of StarCapitalCorp.com. ECF No. 31 and 31-1, ¶ 3. Sedo.com informed Ares that it had held the domain in escrow while it was sold, and, in response to discovery requests, identified the purchaser of StarCapitalCorp.com as Goh Jia De, located in Singapore. ECF No. 31-1 ¶¶ 4-6. Ares served Goh Jia De via email on October 8, 2019. *Id*. Goh Jia De did not respond by the October 29, 2019 deadline. *Id*. at ¶¶ 7-8. The next day, Ares moved for entry of default against Registrant of StarCapitalCorp.com. ECF No. 31. The Court entered default on October 31, 2019. ECF No. 32. As of the date of this Motion, no Defendant has responded to the Complaint. *E.g.*, ECF Nos. 28-1, 31-1.

## II.    LAW AND ARGUMENT

To enter default judgment, (1) the Court must have subject matter and personal jurisdiction, and (2) the well-pleaded allegations of the Complaint must support judgment. *Entrepreneur Media, Inc. v. Spencer*, No. 1:17-CV-01637-RBJ, 2017 WL 6405810, at *1 (D.Colo. Dec. 15, 2017). Both are met here. Additionally, because the Defendants have not filed a responsive pleading, the allegations of the Complaint are deemed true. *Amair, Inc. v. Gapex Aviation SP. Z o.o.*, No. 15-CV-02596-CMA-KLM, 2019 WL 1651828, at *3 (D.Colo. Apr. 17, 2019).

### A.    The Court has Subject Matter and Personal Jurisdiction Over Defendants.
#### 1.    The Court has Subject Matter Jurisdiction.

The Court has subject matter jurisdiction over Ares's claims arising under the Lanham Act and the ACPA pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), (c), (d), and 28 U.S.C. §§ 1331, 1338,

and 1367. Compl. ¶¶ 13-14. Furthermore, the Court has subject matter jurisdiction over Ares's state law statutory and common law claims pursuant to 28 U.S.C. § 1338(b). *Id.*

### 2. The Court has Personal Jurisdiction over Defendants.

Because Defendants have not appeared, only a *prima facie* showing of personal jurisdiction is necessary. *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1094 (D. Colo. 2014).

**Colorado's Long-Arm Statute.** A defendant is subject to personal jurisdiction in Colorado where it engages in the "transaction of any business within this state" or commits a "tortious act within this state." Colo. Rev. Stat. § 13-1-124. Starlight Capital is subject to personal jurisdiction because it is located and conducts business in Colorado. Compl. ¶¶ 3-4, 45; *see also CrossFit*, 69 F. Supp. 3d at 1094-95.

Defendants are also subject to personal jurisdiction based on their commission of tortious acts in Colorado—namely, trademark infringement. *CrossFit*, 69 F. Supp. at 1094-95. Because "[t]rademark infringement turns on whether customers are likely to be confused, mistaken, or deceived by the use of a trademarked product[,]" "the effects of an infringement will be felt wherever the infringing products are marketed or sold because that is where the confusion, mistake, or deceit will occur." *Greenway Nutrients, Inc. v. Blackburn*, No. 13-CV-01088-MSK-KMT, 2015 WL 1539027, at *5 (D.Colo. Mar. 31, 2015) (jurisdiction where defendants sold infringing product in Colorado and effects of infringement thus felt in Colorado).

Ares has pleaded that Defendants violated a host of federal and state laws—among them, federal and common law trademark infringement. Specifically, Defendants have marketed and promoted their alleged financial products and services in Colorado under the ARES Marks, including when: (1) Defendants held, or intended the public to believe that they held, a press conference in Denver, Colorado on June 19, 2018, touting their alleged cryptocurrency and related products, (2) Defendants represent on the domain StarCapitalCorp.com that they operate out of Denver, Colorado,

and (3) Defendants AresBots, AresBots.io, AresCoin, and AresCoin.io publicized that their alleged products are offered within Colorado through Starlight Capital Group by directing visitors to Starlight Capital Group's website. Compl. ¶¶ 4, 27, 30-34, 45; *see also Entrepreneur*, 2017 WL 6405810, at *1 (jurisdiction over defendants who used infringing marks in Colorado); Guyon Default Judgment Decl., Ex. 6. Defendants are subject to personal jurisdiction under Colorado's long-arm statute.

**Fed. R. Civ. P. 4(k)(2).** The Court also has personal jurisdiction over the non-Colorado Defendants pursuant to Fed. R. Civ. P. 4(k)(2), which provides for personal jurisdiction where "(1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to personal jurisdiction in the courts of any state; and (3) the exercise of jurisdiction otherwise satisfies due process requirements." *RE/MAX, LLC v. Shenzhen Remax Co., Ltd*, No. 115CV02496REBSKC, 2019 WL 1081039, at *4 (D.Colo. Jan. 18, 2019), *report and recommendation adopted,* No. 15-CV-02496-REB-SKC, 2019 WL 1437620 (D.Colo. Feb. 27, 2019).[4] These requirements are satisfied: (1) Ares has asserted violations of the Lanham Act and the ACPA; (2) Defendants appear to reside abroad;[5] and (3) due process is satisfied.

Due process requires that, (1) Defendants have "purposefully directed [their] activities at residents of the United States;" (2) Ares's "claim[s] arise out of or relate[] to Defendant[s'] activities with the forum;" and (3) "the assertion of personal jurisdiction over [Defendants] would be fair and reasonable." *RE/MAX*, 2019 WL 1081039, at *4. All three elements are present here.

First, Defendants have purposefully directed their activities to residents of the United States, in that the Infringing Domains, StarCapitalCorp.com, and the Infringing Uses all are "designed to attract or serve a United States audience." *Id*. For example, StarCapitalCorp.com, which has multiple

---

[4]    Citations and quotation marks are omitted unless otherwise noted.
[5]    Defendants have not appeared, and thus have "not named some other state in which this suit could proceed," further showing that the second element is met. *RE/MAX*, 2019 WL 1081039, at *4.

ties to the Infringing Domains, represents that Starlight Capital Group is in Denver, Colorado. Compl. ¶ 32. Additionally, screenshots show that the Infringing Domains and StarCapitalCorp.com are in English and that pricing is in U.S. dollars. *Id*. at ¶¶ 28-38. Defendants held a press conference in Denver, Colorado in June 2018, touting their alleged cryptocurrency and related financial products. *Id*. at ¶ 45. Finally, reviews on StarCapitalCorp.com appear to have been made by U.S. companies. Guyon Default Judgment Decl., Ex. 4.

Second, Ares's claims relate to Defendants' U.S.-directed activities: Ares alleges that Defendants' myriad and various Infringing Uses of the ARES Marks violate the Lanham Act, the ACPA, and Colorado law. *See, e.g.*, *RE/MAX*, 2019 WL 1081039, at *5 (second element met where plaintiff alleged trademark dilution caused by infringing mark on products sold via Amazon.com).

Third, "the United States' interest in enforcing its intellectual property laws," "Defendant[s'] willful behavior," and Ares's residence in the U.S., all support the exercise of personal jurisdiction over Defendants. *Id*. (finding jurisdiction would comport with due process).

In sum, even if the Court finds that the non-Colorado Defendants are not subject to personal jurisdiction under Colorado's long-arm statute, then they are nevertheless subject to personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2).

**B. Ares has Stated Valid Claims Under Federal and State Law.**

**1. Ares's Well-Pleaded Allegations State Claims for Trademark Infringement.**

Ares's allegations—which must be taken as true—support entry of judgment on Ares's claims for trademark infringement: Ares has established that it, "'(1) owns a protectable trademark; and (2) that Defendants used [a disputed] trademark' that is 'likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.'" *Entrepreneur*, 2017 WL 6405810, at *1.

First, Ares owns 105 trademarks using the "ARES" mark, which are either already registered or are pending registration around the world. Compl. ¶ 16. Six of these trademarks are registered with the United States Patent and Trademark Office and are thus incontestable. *Id*. at *4 ("federal registrations for the . . . [m]arks constitute prima facie evidence that the marks are valid and owned by" the registrant). Moreover, Ares has "developed extensive common law rights in the [ARES Marks] via consistent, wide-spread use of the marks" for more than 20 years. *Id*. Ares owns 150 domain names that incorporate the ARES Marks—from which Ares generates a large percentage of its business— and Ares also promotes its brand via social media. Compl. ¶¶ 20-21. Indeed, "[a]s a result of the above activities and success, the [ARES Marks], . . . have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known, famous, and recognized as identifying goods and services that originate from [Ares], such that they are deserving of strong protection." *Entrepreneur*, 2017 WL 6405810, at *5 (finding marks deserving of strong protection based on similar facts).

Second, Defendants have used the ARES Marks "in commerce to offer similar goods and services to the same class of consumers targeted by" Ares, resulting in a high likelihood of consumer confusion:[6] (1) the ARES Marks and infringing marks "share the leading and dominant 'ARES' term" (Compl. ¶¶ 28-29, 31, 33, 36); (2) the ARES Marks are strong and distinctive (*id*. at ¶¶ 14-24); (3) Ares and Defendants "offer closely related—if not identical—goods and services . . . to the same class of consumers" (*id*. at ¶¶ 49-51); (4) "Defendants have intentionally, knowingly, deliberately, and willfully used the [ARES Marks] to violate [Ares's] trademark rights and trade off [Ares's] goodwill

---

[6] The so-called *Sally Beauty* factors include: "(1) the degree of similarity between the marks; (2) the strength or weakness of the plaintiff's mark; (3) the similarity of products and manner of marketing; (4) the intent of the alleged infringer in using the mark; and (5) the degree of care likely to be exercised by purchasers." *Entrepreneur Media*, 2017 WL 6405810, at *5 (citing *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002)).

and reputation, and have refused to cease this infringement" (*id.* at ¶¶ 52-65); and (5) "consumers are unlikely to exercise a substantial degree of care" when accessing the Infringing Domains, increasing the likelihood of confusion (*id.* at ¶¶ 60-61). *Entrepreneur*, 2017 WL 6405810, at *5.

Thus, Ares has established that Defendants infringed the ARES Marks, in violation of 15 U.S.C. § 1114. Because Ares has stated a claim for federal trademark infringement, Ares has also sufficiently alleged its claims for federal unfair competition and false designation of origin, as well as for common law trademark infringement, unfair competition, and unjust enrichment. *See, e.g.*, *Entrepreneur*, 2017 WL 6405810, at *6 (claim for trademark infringement also stated claims for false designation of origin and unfair competition pursuant to 15 U.S.C. § 1125(a); entering default judgment); *Patagonia, Inc. v. Hunt,* No. 15-CV-02545-REB-STV, 2016 WL 11384337, at *2 (D.Colo. Nov. 2, 2016), *report and recommendation adopted,* No. 15-CV-02545-REB-STV, 2016 WL 6956635 (D.Colo. Nov. 29, 2016) (same, for common law unfair competition; entering default judgment); *A.O. Smith Corp. v. USA Smith Indus. Dev. Inc.*, No. 16-CV-2587-WJM-MJW, 2017 WL 2224539, at *3 (D.Colo. May 22, 2017) (same, for unjust enrichment; entering default judgment). Ares's allegations also state a claim for unfair competition under the Colorado Consumer Protection Act ("CCPA"). *See, e.g.*, *Otter Prod., LLC v. Phone Rehab, LLC*, No. 19-CV-00206-RM-MEH, 2019 WL 4736462, at *10 (D.Colo. Sept. 27, 2019) (plaintiff alleged CCPA violation by stating Lanham Act claim).[7] Compl. ¶¶ 46, 51.

---

[7]     Ares has also satisfied the requirements for a CCPA claim: Defendants' unlawful and deceptive use of the ARES Marks has deceived the public and will continue to deceive the public, and Defendants' deceptive practices have harmed Ares. Compl. ¶¶ 46, 51. As for the "public impact" element of the CCPA, the Infringing Domains, StarCapitalCorp.com, and Defendants' social media accounts are accessible worldwide and Defendants have already "scammed" members of the public. *Id.* at ¶¶ 26-47, 51(b)-(3). This is sufficient. *See, e.g.*, *Wilson v. AdvisorLaw LLC*, No. 17-CV-1525-MSK, 2018 WL 858738, at *4 (D.Colo. Feb. 14, 2018) (plaintiff alleged public impact where deceptive practice posted online for current and potential consumers to read).

### 2. Ares has Stated a Claim for Trademark Dilution.

Ares has stated a claim for trademark dilution because it has alleged that: (1) the ARES Marks are famous and distinctive; (2) Defendants are using the ARES Marks in commerce; (3) Defendants' use of the ARES Marks began years after the marks became famous; and (4) Defendants' use of the ARES Marks "is likely to cause dilution by blurring or dilution by tarnishment." *RE/MAX*, 2019 WL 1081039, at *6; 15 U.S.C. § 1125(c).

First, as established, *supra*, the ARES Marks are "famous and distinctive." In fact, the registered ARES Marks are presumptively distinctive. *RE/MAX*, 2019 WL 1081039, at *6. Second, Defendants have used the ARES Marks in commerce—namely, on the Infringing Domains and StarCapitalCorp.com and via the Infringing Uses. Compl. ¶¶ 26-52; *see also RE/MAX*, 2019 WL 1081039, at *6 (finding infringing marks used in commerce when used on websites like Amazon, Facebook, and eBay). Third, Defendants began misappropriating the ARES Marks in or around 2017—i.e., approximately 20 years after Ares began using the "ARES" mark and trade name, approximately 13 years after Ares registered the "ARES" mark and trade name, and long after the ARES Marks had become famous worldwide. Compl. ¶¶ 15-16; ECF No. 22-1, Exs. 1, 4, 10, 11, 13; *see also RE/MAX*, 2019 WL 1081039, at *6 (finding infringement where defendant began using mark after plaintiff's mark became famous by decades of use).

Fourth, Ares has established that Defendants are likely to dilute the ARES Marks: (1) Defendants have used "marks" that are nearly identical to the ARES Marks—including use of the name "ARES," a nearly identical font, and a similar logo; (2) the ARES Marks are presumptively distinctive; (3) Ares has used the ARES Marks worldwide in connection with its financial services for more than 20 years; (4) the ARES Marks are widely-recognized in the financial services industry; and (5) Defendants clearly "intended to create an association with the" ARES Marks, as evidenced by their use of the term "ARES" with a nearly identical font and logo to promote their alleged financial

services.[8] *RE/MAX*, 2019 WL 1081039, at *7 (finding dilution where plaintiff provided evidence of first four factors; entering default judgment and permanent injunction).

Accordingly, Ares has stated a claim for trademark dilution under 15 U.S.C. § 1125(c).

### 3.  Ares has Stated a Claim for Cybersquatting Under the ACPA.

"The ACPA provides for liability if a person registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive mark, with a bad faith intent to profit form that mark." *CrossFit*, 69 F. Supp. 3d at 1097. Ares has stated a claim for violation of the ACPA.

Defendants own and control the Infringing Domains and StarCapitalCorp.com, and have prominently used the term "ARES" on these websites to sell their alleged financial products and services. Compl. ¶¶ 26-38. But, Ares has used the ARES Marks continuously since approximately 1997 in the financial services industry and, as set forth, *supra*, the ARES Marks are distinctive and famous. *Id*. at ¶¶ 50, 52, 58, 65, 73, 81, 85, 103; *see also CrossFit*, 69 F. Supp. 3d at 1098 (allegations that plaintiff continuously used marks, protected its marks, registered its marks, and amassed considerable goodwill within its industry and worldwide was sufficient to allege marks were distinctive and famous). As such, Defendants' unauthorized use of the term "ARES" to now sell their alleged financial services is likely to cause confusion. *Id*. at ¶¶ 26-38; *see also CrossFit*, 69 F. Supp. 3d at 1098 ("[t]he degree of similarity and overlap between the products and services is highly likely to give rise to confusion"). Indeed, Defendants have not only used the term "ARES," but also a similar logo and nearly identical font. Compl. ¶¶ 28, 31. That Defendants have added various generic or descriptive words to the term "ARES"—such as "coin," "block," "X"," and "bots," among others—"does not change the overall impression that the" Infringing Domains and the website StarCapitalCorp.com "are affiliated with, originate from, or are sponsored by" Ares. *CrossFit*, 69 F. Supp. 3d at 1099; *see also*

---

[8]     Ares need not show actual association to show dilution. *RE/MAX*, 2019 WL 1081039, at *8 (finding dilution even where plaintiff did not provide evidence of this factor).

*Marker Int'l v. deBruler*, 635 F. Supp. 986, 999) (D. Utah 1986) (defendant cannot simply add a word to the one shared with plaintiff).

Further, Defendants' use of the term "ARES" is clearly in bad faith. The term "ARES" is part of the Infringing Domains, is used throughout the Infringing Domains and StarCapitalCorp.com, and is on Defendants' social media accounts. Compl. ¶¶ 26-47; *see also CrossFit*, 69 F. Supp. 3d at 1100 (bad faith shown by excessive use of marks on and in domain name). Bad faith is also established because Defendants have "willfully disregarded" Ares's cease and desist letters "and refused to stop using the infringing domain name[s] or to transfer the domain[s]." *CrossFit*, 69 F. Supp. 3d at 1101. Defendants have also ignored this lawsuit and done their utmost to evade service. Compl. ¶ 9; ECF No. 22-1 ¶ 23, Ex. 13. Clearly, Defendants do "not have reasonable grounds or the actual belief that the use of the domain name was a fair use or otherwise lawful" and have violated the ACPA. *CrossFit*, 69 F. Supp. 3d at 1101.

### 4. Ares has Stated a Claim for Civil Conspiracy under Colorado Law.

As set forth in the Complaint, Defendants' unlawful, unauthorized use of the ARES Marks constitutes a civil conspiracy to commit trademark infringement, counterfeiting, unfair competition, and cybersquatting under federal and Colorado law. Compl. ¶ 113.

Ares has easily established the necessary elements for civil conspiracy: "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Bolsa Res., Inc. v. Martin Res., Inc.*, No. 11-CV-01293-MSK-KMT, 2014 WL 4882132, at *1 (D.Colo. Aug. 28, 2014), *report and recommendation adopted sub nom. Bolsa Res., Inc. v. Salzburg Holdings, LLC*, No. 11-CV-01293-MSK-KMT, 2014 WL 4980045 (D.Colo. Sept. 30, 2014) (finding plaintiff stated claim for civil conspiracy where plaintiff alleged that

defendants conspired to deprive plaintiff of its property, including via misappropriation of plaintiff's trade secrets, and entering default judgment).

Specifically, Defendants are more than two persons and entities with the objective of unlawfully using and profiting from the ARES Marks and Ares's substantial goodwill in the financial services industry. Compl. ¶¶ 26-47. Defendants have used the ARES Marks on the Infringing Domains and StarCapitalCorp.com, as well as in their promotion and marketing of their alleged cryptocurrency platform and related goods and services—all with the goal of capitalizing on Ares's reputation and misleading consumers into believing that Defendants are affiliated with Ares. *Id*. That Defendants have engaged in "unlawful overt act[s]" is clear: Defendants have infringed upon and diluted Ares's trademarks under federal and Colorado law, violated the ACPA, engaged in unfair competition, and been unjustly enriched by their actions. *See, supra* § III(B)(1) – (3).

Defendants' "meeting of the minds" to violate Ares's rights is evidenced by their organized use of the ARES Marks across four websites, numerous social media channels, and throughout a public relations campaign promoting Defendants' alleged cryptocurrency platform and related goods and services. Compl. ¶¶ 26-47. For example, StarCapitalCorp.com lists Flint as the "Head of Digital and Programming" for Starlight Capital Group. *Id*. at ¶ 34. Starlight Capital Group and Flint held a press conference at the Ritz Carlton in Denver, Colorado in June 2018 to promote their alleged initial coin offering for "ARESCOIN." *Id*. at ¶ 45. AresCoin and AresCoin.io, in turn, together with AresBots and AresBots.io, publicize that their alleged financial services are offered through and with Starlight Capital Group by directing visitors to their domains to Starlight Capital Group and StarCapitalCorp.com. *Id*. at ¶¶ 27, 30-34. In fact, Flint is *also* listed as the "Founder" of AresCoin on AresCoin.io. *Id*. at ¶ 31. AresCoin.io displays a "roadmap" for an alleged initial coin offering that is conspicuously similar to a "roadmap" on the Facebook page for AreszCoin. *Id*. at ¶¶ 37-38. Defendants

14

have also promoted their alleged goods and services in China at the 7th China Forex Expo iBlockchain Summit. *Id*. at ¶ 46; Guyon Default Judgment Decl., Ex. 5. Further, Ares served Requests for Admission on Starlight Capital Group asking it to admit its conspiracy to infringe Ares's marks, which Starlight Capital Group failed to respond to. Guyon Default Judgment Decl. ¶ 8, Ex. 7. Starlight Capital Group failed to respond to these Requests for Admission, and it has therefore admitted that Ares's allegations of a civil conspiracy are true. *Id*. ¶ 8; Fed. R. Civ. P. 36(a)(3).

Finally, Defendants' unlawful actions have damaged Ares and harmed its reputation. Compl. ¶ 51. For example, Ares is regulated by the SEC; in contrast, Defendants promote that they actively seek to avoid regulation. *Id*. at ¶ 51(a). Moreover, Defendants' alleged financial services are (unsurprisingly) a scam, and have been reported as such by consumers. *Id*. at ¶ 51(b)-(d). As a result, consumers will likely—erroneously—believe that Ares itself is operating as a rogue financial service provider that is attempting to thwart the SEC's purview and that Ares's services are also "scams." *Id*. Clearly, these negative associations harm Ares's reputation as a "SEC-registered premium investment" financial provider, and the significant goodwill Ares has built.

In sum, Ares has sufficiently pleaded a case for civil conspiracy.

### 5.    Ares is Entitled to the Injunctive Relief Sought in the Complaint.

Ares is entitled to permanent injunctive relief to stop Defendants' unauthorized and unlawful use of the ARES Marks, as well as to compel Defendants to transfer the Infringing Domains and StarCapitalCorp.com to Ares. Defendants' use of the ARES Marks creates the false impression that Defendants are affiliated, connected, or associated with Ares, thereby creating consumer confusion. Ares has suffered irreparable injury, and will continue to do so unless and until Defendants' conduct is stopped. "Defendants' lack of response to this lawsuit indicates that Defendants' infringing activities might continue, and therefore Defendants' wrongful conduct must be ceased." *Entrepreneur Media*, 2017 WL 6405810, at *6. Under the Lanham Act, the Court has the authority to grant injunctive and

other equitable relief to prevent further violations of a plaintiff's trademark rights. 15 U.S.C. § 1116. This includes the power to order the transfer of a domain name. *Entrepreneur Media*, 2017 WL 6405810, at *6.

Ares has shown that it will prevail on the merits of all its claims and that, absent an injunction, it will suffer irreparable harm to its reputation and goodwill as a result of the consumer confusion described in the Complaint and *supra*. *Patagonia*, 2016 WL 11384337, at * 3 ("irreparable injury . . . presumed" where likelihood of confusion shown). By contrast, Defendants will not be harmed by an injunction, because they "have no legitimate interest in continuing to utilize [Ares's] trademark[s]." *Patagonia*, 2016 WL 11384337, at * 3. Nor will the public interest be adversely affected by an injunction: "[a]n injunction that 'merely protects the plaintiff's trademark . . . is directly aligned with public policy interests.'" *CrossFit*, 69 F. Supp. 3d at 1106.

This situation is tailor-made for a permanent injunction: absent such relief from the Court, Defendants' unlawful and unauthorized use of the ARES Marks will continue unabated, and Ares will continue to suffer irreparable harm to its reputation and goodwill.

### 6. Ares is Entitled to Disgorgement of Defendants' Profits.

Finally, Ares is entitled to disgorgement of Defendants' gains and profits obtained from their trademark violations. 15 U.S.C. § 1117(a). Disgorgement of profits requires a showing of "either actual damages or willful action on the part of the defendant," and requires the court to weigh the principles of equity. *Gentle Giant Moving Co., Inc. v. Gentle Giant Moving & Storage Inc.*, No. 17-CV-02762-PAB-NRN, 2019 WL 4200397, at *7 (D.Colo. Sept. 4, 2019).

Defendants' trademark violations were clearly willful, as demonstrated by their continued use of the ARES Marks—even after Ares sent multiple cease and desist letters, and even after Ares filed the instant action and served Defendants. *Id*. at *8 (failure to respond to cease and desist letters

demonstrated willful intent sufficient to award disgorgement of profits). That Defendants used the ARES Marks "in connection with the same type of services that [Ares] offers and was targeting the same market as [Ares] targets also supports an inference of willful action." *Id*.

Equitable principles, including "whether the plaintiff lost sales due to the trademark infringement, whether the defendant benefitted from any goodwill associated with the trademark, and whether there was consumer confusion or deception caused by the infringement," support disgorgement. *Id*. Defendants here have profited from their unlawful use of the ARES Marks. For example, numerous consumers—deceived into investing with Defendants—have posted online that Defendants' services are a scam. Compl. ¶ 51(b). Defendants have also claimed that a venture capital firm invested in AresCoin; whether true or not, the representation supports the inference that Defendants have profited from their use of the ARES Marks—either via an actual investment by AI8, or via investors deceived by this misrepresentation. *Id*. at ¶ 51(e). Defendants are also expanding their website capabilities by purchasing more mailboxes for their websites, again supporting an inference that Defendants have profited from their deceit. ECF No. 22-1 ¶ 7(c). Finally, Defendants posted a video on YouTube and Vimeo showing that they won an award for AresCoin; again, supporting the inference that Defendants have profited from their deception. Compl. ¶ 46; Guyon Default Judgment Decl., Ex. 5.

Therefore, Ares moves for disgorgement of Defendants' gains and profits realized while Defendants used the ARES Marks or engaged in the Infringing Uses. Ares asks that the Court order Defendants to provide a written accounting specifying Defendants' gains and profits so that the appropriate amount of the award can be determined with the requisite "reasonable certainty." *See Nat'l Van Lines, Inc. v. AALL Pro Movers, Inc.*, No. 11-CV-01080-REB-BNB, 2012 WL 4378117, at *3 (D.Colo. Sept. 25, 2012) (provisional award of disgorgement of profits and ordering written accounting

within 14 days). Should Defendants fail to provide an accounting, Ares requests leave to submit evidence of Defendants' gains and profits after Ares has an opportunity to conduct post-judgment discovery pursuant to Fed. R. Civ. P. 69(a)(2).

### 7.    Ares is Entitled to its Reasonable Attorneys' Fees and Costs.

Ares is also entitled to its reasonable attorneys' fees and costs. *Dun-Rite Home Improvements, Inc. v. Dun-Rite, LLC*, No. 15-CV-00316-WYD-CBS, 2016 WL 11384331, at *9 (D.Colo. Feb. 2, 2016), *report and recommendation adopted*, No. 15-CV-0316-WYD-CBS, 2016 WL 1178276 (D.Colo. Mar. 28, 2016). The Lanham Act permits the court to award reasonable attorneys' fees in an exceptional case, i.e., a case involving "malicious, fraudulent, deliberate, or willful" trademark infringement. *Gentle Giant*, 2019 WL 4200397, at *9.

As set forth above in more detail, Defendants acted deliberately, willfully, and in bad faith in their unauthorized and unlawful use of the ARES Marks to promote their alleged financial products and services. *See, supra* § I(A). "Indeed, with full knowledge of this action, Defendants continued to utilize the" ARES Marks, and their conduct was clearly willful and in bad faith. *Dun-Rite*, 2016 WL 11384331, at *6.

Ares is also entitled to its costs as a matter of course. 15 U.S.C. § 1117(a). As set forth, *supra*, Ares was forced to go to great lengths to serve Defendants, and in the process incurred significant costs. Ares is entitled to its costs of service, as well as its filing fees incurred in connection with the multiple motions necessary to identify and serve Defendants with process. *Dun-Rite*, 2016 WL 11384331, at *9 (finding plaintiff entitled to filing and service fees).

Therefore, Ares hereby moves, pursuant to 15 U.S.C. § 1117 and Fed. R. Civ. P. 54(d)(2), for an award of its reasonable attorneys' fees and costs. To determine reasonable attorneys' fees, the district court must arrive at a "lodestar figure by multiplying the hours plaintiff's counsel reasonably spent on the litigation by a reasonable hourly rate." *Case v. Unified Sch. Dist. No. 233, Johnson*

*County, Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998). Should the Court grant an award of fees and costs, Ares requests leave to submit its supporting declaration of counsel to show the Court its: (1) contemporaneous billing records; (2) Ares's counsels' hourly rates; and (3) evidence that the rates are reasonable for attorneys of their skill and experience, and in accordance with "the prevailing market rates in the relevant community;" and (4) bill of costs.

## III.    CONCLUSION

For the foregoing reasons, Ares requests that the Court enter default judgment against Defendants, and judgment in favor of Ares on its claims brought pursuant to the Lanham Act, the ACPA, and Colorado common law, and award monetary damages, costs, and attorneys' fees.

**WHEREFORE**, Ares Management LLC prays that the Court:

1.    Enter an Order of Judgment by Default against Defendants as set forth in the proposed Order accompanying this Motion;

2.    Grant Ares disgorgement of Defendants' gains and profits and order Defendants to provide an accounting of their gains and profits within 14 days;

3.    Grant Ares its attorneys' fees and costs, and grant leave to submit its supporting declaration of counsel with respect to its reasonable attorneys' fees and costs sought; and

4.    Grant Ares such other and further relief as the Court may deem just and proper.

Dated: December 5, 2019

By: *s/ Nina D. Boyajian*
NINA D. BOYAJIAN (CA SBN 246415)
*BoyajianN@gtlaw.com*
REBEKAH S. GUYON (CA SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700; Facsimile: 310-586-7800

GREENBERG TRAURIG LLP

AMY L. KRAMER (SBN 41603)
*KramerA@gtlaw.com*
1144 15th Street, Suite 3300
Denver, CO 80202
Telephone: 303-572-6500; Facsimile:  303-572-6540
Attorneys for Plaintiff Ares Management LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2019, a true and accurate copy of the above and foregoing was served by U.S. mail as follows:

Starlight Capital Group, Inc.
1942 Broadway St., Suite 314C
Boulder, CO 80302

Sedo.com, LLC
222 Third Street, Suite 3120
Cambridge, MA 02139

I hereby certify that on December 5, 2019, a true and accurate copy of the above and foregoing was served by email as follows:

contact@starcapitalcorp.com
rolandleeky@gmail.com
contact@arescoin.io
contact@aresbots.io
areszcoin@gmail.com
cashtocoin777@gmail.com
gohjiade@hotmail.com

*s/ Haleh Sharifi*
Haleh Sharifi